HARTFORD FIRE INSURANCE
COMPANY, Plaintiff,

v.

Joseph MITLOF d/b/a Hudson Valley
Waterways, Village of Tarrytown, Vil-
lage of Nyack, Nyack Parking Author-
ity, Key Bank U.S.A., Rivercrest
Homeowners Association a/k/a River-
crest Corp., Garrison Yacht Club and
Nyack Boat Club, Defendants.

No. 99 CIV. 9841(WCC).

United States District Court,
S.D. New York.

Dec. 15, 2000.

Bigham Englar Jones & Houston, Helen
M. Benzie, Eric D. Suben, of counsel, New
York City, for Plaintiff.

Gair, Gair, Conason, Steigman & Mack-
auf, Candice Singer Ram, of counsel, New
York City, for Intervenor Defendants Su-
san Thorson, William Thorson, Denny Ja-
cobson, Francis O'Brien, Eleanor Budoff,
Helen Gurvitch and John Russo.

Worby, Borowick, Groner LLP, Richard
S. Vecchio, of counsel, White Plains, NY,

for Intervenor Defendants Steven D. Leipig and Jack Raywid, Executors of the Estate of Milton Salkind, Deceased.

Raymond J. Keegan & Assoc., LLP, Jeffrey J. Keegan, of counsel, White Plains, NY, for Intervenor Defendants Kathleen O'Brien.

## *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

In this declaratory judgment action, plaintiff Hartford Fire Insurance Company ("Hartford") seeks, among other things, to void or deny coverage by a marine insurance policy (the "Hartford Policy") that Hartford issued to defendant Joseph Mitlof d/b/a/ Hudson Valley Waterways ("Mitlof"). By three separate motions, Susan Thorson, William Thorson, Denny Jacobson, Francis O'Brien, Elanor Budoff, Helen Gurvitch, John Russo and Kathleen O'Brien—eight passengers aboard defendant's pontoon boat who were allegedly injured when it capsized—and Steven D. Leipzig and Jack Raywid, as Executors (the "Executors") of the Estate of Milton Salkind—a passenger who drowned in the accident—(collectively, the "Passengers") now seek to intervene as defendants in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. For the reasons stated below, the Passengers's motions are denied.

## BACKGROUND [1]

Mitlof operated a water taxi service on the Hudson River serving Tarrytown, Nyack and Pierpont. Hartford issued Mitlof a marine hull protection and indemnity policy with passenger vessel amendments and warranties for a vessel named *Lenape Seal,* effective June 5, 1998. On July 16, 1998, Hartford agreed to insure a second vessel, *Conservator,* under the Hartford Policy. On August 23, 1998, the pontoon boat Conservator left Nyack carrying twenty-eight passengers and capsized. Several passengers aboard when the boat capsized brought personal injury lawsuits against Mitlof in New York State Supreme Court for Rockland County (the "State action"). (Pass. Mem. Supp. Mot. Intv. at 2.) None of these actions has yet been litigated to judgment.

Hartford investigated the accident under a reservation of rights and ultimately declined coverage because: (1) the policy was void from inception because Mitlof failed to disclose the prospective use of *Conservator* to carry more passengers than *Lenape Seal;* or, alternatively, (2) Mitlof breached an express warranty regarding the number of passengers permitted on *Conservator;* and (3) there was no valid Certificate of Inspection issued by the Coast Guard permitting *Conservator* to carry passengers for hire.

Hartford commenced the instant litigation on September 17, 1999. On April 11, 2000, Susan and William Thorson, Jacobson, Francis O'Brien, Budoff, Gurvitch and Russo moved to intervene. The Executors moved to intervene on April 28, and Kathleen O'Brien moved to intervene on June 15, 2000. By consent of all the Passengers's attorneys, the Executors and Kathleen O'Brien adopted all the factual and legal arguments set forth in the April 11 motion papers. (*See* Vecchio Affd. ¶ 5; Keegan Affm. ¶ 7.) The Passengers's State actions were also consolidated for the purposes of discovery and trial. (*See id.* ¶ 6.) Therefore, in the interest of judicial economy, the Court will consider all the motions simultaneously.

## DISCUSSION

The Passengers claim they should be allowed to intervene in the instant action under either Fed. R. Civ. P. 24(a) (Inter-

1. The facts and prior proceedings of this action are set forth in this Court's April 17, 2000 Opinion and Order, familiarity with which is assumed, which granted Reliance Insurance Company's ("RIC") motion to intervene. *See* 193 F.R.D. 154, 156 ("*Reliance*"). The facts and prior proceedings particularly relevant to the instant motion are set forth below.

vention of Right) or 24(b) (Permissive Intervention). Hartford claims that they are precluded from intervention in this action by New York's direct action statute, N.Y. INS. LAW § 3420(i) and N.Y. INS. LAW § 2117(b)(3). Because the parties cite no case, and an independent search by this Court found none precisely on point with the facts of the instant case—where the marine insurer initiated a declaratory judgment action against the insured in federal court and the injured third parties subsequently sought to intervene as defendants—this is a case of first impression in both New York's state and federal courts.

### I. *Choice of Law*

■ As an initial matter, the Court notes that it previously applied New York law in *Reliance* pursuant to its admiralty jurisdiction, *see* 193 F.R.D. at 157,[2] and that the instant motion concerns the same Hartford Policy, a marine hull protection and indemnity ("P & I") contract. Moreover, despite the Passengers's failure to raise the argument, the Court concludes *sua sponte* that although Hartford brought the action under federal law by affirmatively invoking the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), the Passengers's claim is governed by New York law. We adopt the reasoning in *NAP, Inc. v. Shuttletex, Inc.*, 112 F.Supp.2d 369 (S.D.N.Y.2000) and *Richards v. Select Ins. Co.*, 40 F.Supp.2d 163 (S.D.N.Y.1999), and rule that the New York Insurance Law provisions are "substantive statute[s] and that ... invocation of the federal declaratory judgment procedure must yield to the outcome that proper application of state law would indicate." *NAP*, 112 F.Supp.2d

at 372; *see also Richards*, 40 F.Supp.2d at 168 ("[T]he requirement of a judgment against the insured as a predicate to asserting a claim is best viewed as an element of the [substantive] rights created in § 3420, and not merely a procedural, or timing, control.").

In *Richards*, plaintiffs who were injured by an insured but who had not yet received a judgment against him brought a declaratory judgment action against his insurer after the insurer sued the insured for a denial of coverage. *See id.* at 165. They argued that "Insurance Law § 3420 is procedural and, therefore, inapplicable in a federal court which is guided by federal procedural rules." *Id.* Judge Mukasey held that the New York Insurance Laws are substantive rather than procedural, citing both *State Trading Corp. v. Assuranceforeningen Skuld*, 921 F.2d 409, 416 (2d Cir.1990) (holding that Connecticut's limited direct action statute—one nearly identical to New York's—is substantive law), *see Richards*, 40 F.Supp.2d at 167, and the statutory history of § 3420 (noting that the legislature inserted the judgment requirement in 1918, only one year after the original statute was enacted), *see id.* at 168; *see also NAP*, 112 F.Supp.2d at 372 ("The theory and logic of § 3420 evince a legislative scheme manifestly charged with substantive purpose.").

He explained the interplay between the DJA and § 3420 as follows:

A declaratory judgment is a remedy.... Establishment of a case or controversy as required under [28 U.S.C. § 2201] is necessary ... to insure that a declaratory judgment is not merely advisory. A

---

**2.** The Court reasoned that

The Hartford Policy is a contract of marine insurance within the admiralty jurisdiction of this Court. *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir.1998). Accordingly, general federal maritime law applies. *Royal Ins. Co. of America v. Sportswear Group, LLC*, 85 F.Supp.2d 275, 278 (S.D.N.Y.2000). Pursuant to federal maritime law, the court "determines 'the scope and validity of the

[marine insurance] policy provisions [ ] involved' ... by looking to state law." *Id.* (citing *Advani*, 140 F.3d at 162). 193 F.R.D. at 157. Moreover, the Court held that New York law applied because the Hartford Policy contained no choice of law provision, the defendants are a New York municipality, and both the issuance and the covered property and activity of the policy were in New York. *See id.*

declaratory judgment action is premature if standing to maintain such an action depends on a future event that is beyond the control of the parties and that may never occur.

     \*    \*    \*    \*    \*    \*

Plaintiff's remedies are those provided for in § 3420. To permit an injured plaintiff to bring a declaratory judgment action before the conditions of the statute are fulfilled would bestow upon him a "further privilege" not provided for in § 3420. In addition, such a judgment would be advisory to the extent that an injured party's statutory rights are inchoate until such time as a judgment against the insured is obtained.

*Id.* at 169–70 (internal citations omitted); *see also NAP*, 112 F.Supp.2d at 374, 376 ("[W]ere the Court ... to ignore the potential [substantive] impacts of § 3420, it would effectively create a federal cause of action and confer standing to maintain a suit where such a privilege may not exist under state law.... [Plaintiff's] standing to maintain this case, even though the action was brought under the [DJA], must be decided in accordance with § 3420."). Therefore, remaining consistent with our own *Reliance* decision and adopting the sound reasoning in *Richards* and *NAP*, we will apply New York substantive law here.

## II. N.Y. Insurance Law § 3420

Having found that New York law applies, we next must decide whether the Passengers are foreclosed by N.Y. INS. LAW § 3420(i) and N.Y. INS. LAW § 2117(b)(3) from intervening in the instant action.

### A. Prerequisite of Judgment

■ In *NAP*, plaintiffs who were injured by an insured simultaneously sued the insured for damages and his insurer for a determination that it had to pay any damages resulting from the underlying action. *See* 112 F.Supp.2d at 370. Judge Marrero began his analysis by discussing the provisions of § 3420, which

defines four specific prerequisites as elements of a direct third-party action against an insurer: (1) a judgment against the insured; (2) a thirty-day waiting period, measured from service of notice of entry, during which the judgment remains unsatisfied; (3) an action against the insurer maintained by the person who obtained the judgment; and (4) the amount of the judgment cannot exceed the applicable limit of coverage under the insurance policy.

*Id.* at 373 (citing N.Y. INS. LAW § 3420(a)(2)); *Richards*, 40 F.Supp.2d at 165. He then stated that "[t]hese conditions are not waivable procedures, but integral predicates for stating and sustaining a cause of action under the statute." *NAP*, 112 F.Supp.2d at 373 (citation omitted); *see also Richards*, 40 F.Supp.2d at 166 ("[If] plaintiffs do not yet have a judgment, let alone an unsatisfied judgment, against [the insured].... [t]here seems no doubt ... that if plaintiffs were to file a complaint in state court seeking money damages from [the insurer], that complaint would be dismissed."). Thus, the Passengers cannot bring a direct action against Hartford until they have obtained a judgment against Mitlof in the State action that remains unsatisfied for thirty days.

### B. Marine Insurance Exception

■ Under New York common law, an insurer under an indemnity policy was not liable to an injured person who had obtained a judgment against the insured, even when the insured was insolvent and judgment-proof. *Dicola v. American S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. (In re Prudential Lines ["PLI"])*, 158 F.3d 65, 74 (2d Cir.1998). Although this rule was altered by statute, the statute expressly preserves the common law rule for marine insurance. N.Y. INS. LAW § 3420(i) (referencing N.Y. INS. LAW §§ 2117(b)(3) and 1113(a)(21)); *see also PLI*, 158 F.3d at 74–75; *Dunn v. American Home Assur. Co.*, 158 A.D.2d 505, 551 N.Y.S.2d 268, 270 (2d Dep't 1990).

However, the Passengers argue that the statute is unclear on whether the marine insurance exception is a blanket one, or one that applies only to "ocean going vessels." (*See* July 10, 2000 letter from Candice S. Ram to this Court [ "Ram July 10 ltr"].) The Court discovered only one decision that considered the precise point, but it was ultimately vacated by a settlement agreement. *See Royal Ins. Co. of America v. A & C Ship Fueling Corp.*, 1992 A.M.C. 1686 (E.D.N.Y. Mar.21, 1992), *vacated ab initio by stipulation of parties*, 1995 A.M.C. 504, 505 (E.D.N.Y. Jul.21, 1994). Furthermore, because the New York Court of Appeals has not faced the issue, this Court will interpret the statute on its own, considering how the New York Court of Appeals would likely do so, and apply it to the facts of the instant case. *See Gasperini v. Center for Humanities, Inc.*, 66 F.3d 427, 430 (2d Cir.1995).

§ 3420(a)(2) reads, in pertinent part:

[that] in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty (30) days from the serving of the notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may ... be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

However, the application of § 3420(a)(2) is limited by § 3420(i), which provides:

the provisions of this section [3420] shall not apply to any policy or contract of insurance ... set forth in paragraph [3] of subsection (b) of section [2117] of this chapter.

§ 2117(b)(3) delineates "marine insurance of the following kind or kinds":

(A) insurance against perils of navigation, transit or transportation upon hulls, freights or disbursements, or other shipowner interests, goods, wares, merchandise and all other property and interests therein, in course of exportation from or importation into any country, or transportation coastwise, including transportation by land or water from point of origin to final destination and including war risks and marine builders' risks; and

(B) insurance in connection with ocean going vessels against any of the risks specified in paragraph [21] of subsection (a) of section [1113] of this chapter.

§ 1113(a)(21) reads:

"Marine protection and indemnity insurance," means insurance against, or against legal liability of the insured for, loss, damage or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person.

The Passengers argue that the term "marine insurance" in § 2117(b)(3)(A) "concerns insurance for the ship owner's personal property in the course of import or export and is clearly not applicable to [Passengers's] personal injury claims." (Ram July 10 tr at 2.) The Hartford Policy definitely does not fall into this category, for there is no evidence that *Conservator* was involved in import/export shipping. On the contrary, it was a pontoon boat certified to travel only in the "Norwalk Connecticut harbor area, not more than one (1) mile from shore, on voyages not to exceed thirty (30) minutes in duration" (Coast Guard 5/21/97 Certificate of Inspection at 1). Thus, it was clearly not an "ocean going vessel;" nor was it even certified to travel on the ocean. *See, e.g.,* BLACK'S LAW DICTIONARY 1080 (6th ed.1990), which defines "ocean" as "the main or open sea; the high sea; that portion of the

sea which does not lie within the body of any country and is not subject to the territorial jurisdiction or control of any country, but is open, free, and common to the use of all nations."

Hartford contends that cases applying the § 3420(i) exception have interpreted the section broadly to encompass insurers of small boats such as yachts, *see Dunn*, 551 N.Y.S.2d at 270 (considering three-part statutory exception and holding that injured plaintiffs lacked standing to bring declaratory judgment action against insurers having issued a "yacht hull and protection and indemnity policy"), and tugs, *see Cowan v. Continental Ins. Co.*, 86 A.D.2d 646, 446 N.Y.S.2d 412, 413–14 (2d Dep't 1982) (holding that survivor of a crew member of a tugboat lost at sea could not bring declaratory judgment action against a marine P & I insurer pursuant to N.Y. INS. LAW § 167(4), the predecessor of § 3420). (*See* July 17, 2000 letter from Helen M. Benzie to this Court ["Benzie July 17 ltr"].) Nonetheless, Hartford itself admits that "[t]he operative question is whether the coverage is one of the kinds of insurance in connection with ocean going vessels," and "whether the insurance was of the *type* used for such vessels." (Benzie July 17 ltr at 5, 6 (emphasis in original).) To answer these "operative" questions, we must examine the policy itself.

Hartford entered into a marine hull P & I contract with Mitlof for a vessel named *Lenape Seal* on June 5, 1998. (Complt. ¶ 19.) On or about July 7, 1998, Mitlof sought coverage for a second vessel, *Conservator* (*id.* ¶ 20), and on July 16, 1998, Hartford agreed to cover this second vessel under the same policy, effective July 14, 1998. (*Id.* ¶ 22.) In the "Declarations" section of the policy, under the "Geographical or Navigating Limits" column, it reads: "Inland & Coastal Waters of Hudson River between Verrazano Narrows Bridge & Albany, Including East River & Western Long Island Sound, or Held Covered at Additional Premium, if any, to be Agreed." (Complt., Ex. A.) Thus, the par-

ties clearly intended that *Conservator* would travel solely on inland waterways. *Cf. Cowan*, 446 N.Y.S.2d at 413 (recognizing marine exception even where policy "contained a warranty that the tug would not be operated outside the waters of the Long Island Sound").

Furthermore, § 1113(a)(20) defines "Marine and inland marine insurance," and even states that "[i]n this chapter 'inland marine' insurance shall not include insurance of vessels, crafts, their cargoes, marine builders' risks, or other similar risks, commonly insured only under ocean marine insurance policies." This distinction, viewed alongside § 2117(b)(3)'s two-part description of "marine insurance," indicates that the legislature meant to differentiate between inland and ocean going vessels. This leads the Court to conclude that the § 3420(i)—2117(b)(3)—1113(a)(21) exception from direct suits by injured third parties is limited to marine P & I policies covering "ocean going vessels." Because *Conservator* was clearly not an ocean going vessel, the Court holds that the Hartford Policy falls outside of the § 3420(i) exception which bars direct actions against marine insurers.

### B. *Declaratory Actions*

We explained in *Reliance* that "[w]here the plaintiffs are judgment creditors, no matter in what guise, they are barred from bringing a declaratory judgment action to determine coverage under a marine indemnity policy." 193 F.R.D. at 158. The Second Circuit invoked § 3420(i) to bar an action by the trustee of a bankrupt shipping line who sued to determine coverage under the debtor's marine insurance policy. *See PLI*, 158 F.3d at 74–75; *see also Dunn*, 551 N.Y.S.2d at 270 (holding that injured plaintiffs lacked standing to bring declaratory judgment action against insurers because "strangers to a policy of marine protection and indemnity insurance are precluded from bringing an action for a declaratory judgment against insurers"). Likewise, in *Miller v. Ameri-*

*can S.S. Owners Mut. Prot. and Indem. Co.*, 509 F.Supp. 1047, 1049 (S.D.N.Y. 1981), the court held that N.Y. Ins. Law § 167(4), the predecessor of § 3420, barred an injured seaman from bringing suit against the marine insurer of his insolvent vessel; *see also Cowan*, 446 N.Y.S.2d at 413–14 (barring survivor of crew member of tugboat lost at sea from bringing declaratory judgment action against marine P & I insurer under § 167(4)).

Thus the law as construed by the lower New York courts precludes declaratory actions *initiated* by personal injury claimants and judgment creditors against marine insurers. However, the New York Court of Appeals has not spoken on this issue. Moreover, there is neither a New York state nor federal case in which a personal injury claimant sought to intervene as a defendant in a pending declaratory judgment action brought by the insurer. Therefore, the Court must survey the relevant authorities and predict how the New York Court of Appeals would likely rule in this situation. *See Gasperini*, 66 F.3d at 430; *NAP*, 112 F.Supp.2d at 378; *Richards*, 40 F.Supp.2d at 169.

The Passengers cite a line of Appellate Division, Second Department cases that, they claim, "uniformly permit personal injury claimants to participate in declaratory judgment actions where they 'stood to benefit from the policy.' " (Pass. Reply Mem. Supp. Mot. Intv. at 2 (quoting Pl. Mem. Opp. Mot. Intv. at 7).) [3] However, there is equal, if not more, support for the opposite view in the First [4] and Fourth [5] Departments. *See NAP*, 112 F.Supp.2d at 377 ("In gauging how the State Court of Appeals is likely to rule on the issue here, this Court considers where the greater weight of authority lies. In this regard, the Court notes that while the Second Department has decided one way on the issue, two Departments—the First and the Fourth—have ruled differently.").

Equally persuasive for this Court are two recent Southern District opinions that have considered the issue. Judges Marrero and Mukasey both meticulously reviewed the schism in the state appellate courts and ultimately sided with the First and Fourth Departments' holdings. *See NAP*, 112 F.Supp.2d at 378 (" 'absent any

**3.** *See Watson v. Aetna Cas. & Sur. Co.*, 246 A.D.2d 57, 675 N.Y.S.2d 367, 370 (2d Dep't 1998) ("We read [§ 3420] as prohibiting, by its plain terms, only a direct cause of action to recover money damages, and not prohibiting a declaratory judgment action by the plaintiff in the underlying tort action seeking a declaration that a disclaiming insurance company owes a duty to defend or indemnify the tortfeasor."); *Tepedino v. Zurich–American Ins. Group*, 220 A.D.2d 579, 632 N.Y.S.2d 604, 605 (2d Dep't 1995) ("A party who is not privy to an insurance contract but would nevertheless benefit from the . . . policy may bring a declaratory judgment action to determine whether the insurer owes a defense and/or coverage under the policy."); *Costa v. Colonial Penn. Ins. Co.*, 204 A.D.2d 591, 612 N.Y.S.2d 617, *leave to appeal dismissed*, 84 N.Y.2d 966, 621 N.Y.S.2d 513, 645 N.E.2d 1213 (2d Dep't 1994) (same). But see *Dunn*, 551 N.Y.S.2d at 270, and *Cowan*, 446 N.Y.S.2d at 413–14, two Second Department cases that both denied injured third parties the right to bring declaratory judgments against marine P & I insurers.

**4.** *See, e.g., Abdalla v. Yehia*, 246 A.D.2d 373, 667 N.Y.S.2d 736, 737 (1st Dep't 1998) ("The

defendant/third-party plaintiff was not the insured of the third-party defendant, and thus had no legally cognizable interest in the relationship between the co-defendant and his insurer.") (citing *Clarendon Place Corp. v. Landmark Ins. Co.*, 182 A.D.2d 6, 587 N.Y.S.2d 311, 313 (1st Dep't), *appeal dismissed and leave to appeal denied*, 80 N.Y.2d 918, 589 N.Y.S.2d 303, 602 N.E.2d 1119 (1992)); *Mount Vernon Fire Ins. Co. v. NIBA Constr. Inc.*, 195 A.D.2d 425, 600 N.Y.S.2d 936, 937 (1st Dep't 1993) ("The injured parties are neither proper parties defendant nor parties subject to permissive joinder where there has been no judgment against the insured in the underlying action. Until such time, the injured parties are mere 'strangers to the insurance contracts at issue.' ") (citing *Clarendon*, 587 N.Y.S.2d at 312).

**5.** *See Hershberger v. Schwartz*, 198 A.D.2d 859, 604 N.Y.S.2d 428, 429 (4th Dep't 1993) ("Plaintiffs are strangers to the [insured's] . . . policy and may not seek enforcement of the insurer's obligation under the policy.") (citing *Clarendon*, 587 N.Y.S.2d at 312).

legally cognizable interest in the insurance contracts at issue, there is no justifiable controversy' between a third party and the insurer to give such party standing.... [D]eclaratory relief under these circumstances would be premature if the third party's standing to maintain such action is contingent on the occurrence of a future event which may not happen.") (quoting *Clarendon,* 587 N.Y.S.2d at 313); *see also Richards,* 40 F.Supp.2d at 169 (same). This Court adopts the *NAP* and *Richards* analyses, and concludes that the New York Court of Appeals would not allow an injured third party to intervene in a declaratory action initiated by a marine insurer.

In support of their motion, the Passengers rely heavily on an unpublished decision in *deBruyne v. Clay,* No. 94 Civ. 4707, 1997 WL 471039 (S.D.N.Y. Aug.18, 1997). (*See* Pass. Mem. Supp. Mot. Intv. ¶14; Pass. Reply Mem. Supp. Mot. Intv. at 2). In *deBruyne,* Judge Martin ruled that § 3420 is procedural in nature and that a declaratory judgment action could be maintained against an insurer which had itself brought an action in state court for declaratory judgment denying coverage. *See* 1997 WL 471039, at * 4; *see also Gravatt v. General Star Indem. Co.,* No. 98 Civ. 6670, 1998 WL 842351, at * 2 (S.D.N.Y. Dec.2, 1998) (same); *Ryder Truck Rental, Inc. v. Allcity Ins. Co.,* No. 94 Civ. 0712, 1995 WL 628968, at * 2 (S.D.N.Y. Oct.26, 1995) (same). He further held that the plaintiffs, children who claimed a trustee breached fiduciary duties to them, could add the trustee's insurer as a defendant in their action against the trustee and seek a declaration as to coverage before obtaining a judgment against the insured. *See deBruyne,* 1997 WL 471039, at *1.

Judge Martin explained that "[t]he policy considerations that support the provision of state law that an injured party may not sue a tortfeasor's insurance carrier for a declaration that the carrier has a duty to indemnify do not necessarily apply where the carrier itself has initiated a declaratory judgment action to resolve that issue." *Id.* at *3. However, Judge Mukasey questioned Judge Martin's rationale, and ruled that § 3420 is substantive because "it does not provide merely the process for enforcing rights; rather it creates the rights and duties to be enforced." *Richards,* 40 F.Supp.2d at 167; *see also NAP,* 112 F.Supp.2d at 377 (noting the split in authority between *deBruyne/Gravatt* and *Richards,* and concluding that "[t]his Court is persuaded by the reasoning in *Richards*").

The Court notes that our *Reliance* decision, as well as dicta in both *Richards* and *NAP,* suggest that the Southern District courts believe that the New York Court of Appeals would allow the Passengers into the present action merely because Hartford initiated the declaratory action. *See Reliance,* 193 F.R.D. at 158–59 ("In light of [a] narrow reading of section 3420, we hesitate to expand the exclusion for marine insurers in section 3420(i) to ban intervention as a defendant in a declaratory judgment action commenced by the insurer itself."); *Richards,* 40 F.Supp.2d at 170 (noting factual posture of *deBruyne* insurer's actions); *NAP,* 112 F.Supp.2d at 377 (recognizing that "the *deBruyne* court qualified the scope of the issue it considered and decided more narrowly to encompass the particular fact that the insurer 'has itself instituted a declaratory judgment action with respect to coverage issues relating [sic] that party's claims against one of its insureds' " (quoting *deBruyne,* 1997 WL 471039, at *3)). The Passengers also state that "[t]his Court specifically noted that the present action was initiated by Hartford itself, and therefore, Hartford cannot assert that it is being brought into this lawsuit against its will. Hartford has not appealed the April 17, 2000 decision of this Court and therefore, this reasoning is binding upon it." (Pass. Reply Mem. Supp. Mot. Intv. at 2.)

Although suggestive, this dictum is not dispositive, and the Passengers have misinterpreted it. Judge Mukasey distin-

guished his case from *deBruyne*, stating that

In this case, it cannot be said that [the insurer] has "join[ed] the third party claimant as a defendant in [insurer's] own action seeking a judicial declaration of the coverage question." (citing *Mount Vernon Fire Ins.*, 600 N.Y.S.2d at 937 (Sullivan, J. concurring)). Therefore, there is no basis here to permit plaintiffs to bring a declaratory judgment action against [the insurer] absent an unsatisfied judgment against the insured.

*Richards*, 40 F.Supp.2d at 170. The same is true of the Passengers; Hartford did not join them in its declaratory action, but rather they seek to intervene as defendants. This restructuring of their relation does not change the substantive rights provided for in § 3420, which leaves Hartford immune from suit by strangers to its marine P & I policy. The Passengers's proposed intervention is an aggressive procedural step, akin to bringing a direct action, and should not succeed merely because they would enter the case as defendants. Judge Marrerro appropriately limned the various considerations implicated under § 3420.

By its terms, [the statutory] arrangement recognizes a third-party right that did not exist previously, and contemplates that the insurer is to be spared of involvement in litigation until the issue of its insured's liability and the scope of the obligation for damages have been adjudicated. For insurers, this condition offers a substantial benefit, mitigating the diminution of previous common law protection they lost in favor of the privilege the statute bestows on the injured claimant. In the event the insured is found not liable, for example, the insurer has no need to be brought into the action at all, an interest especially valuable where the insurer has already made a legitimate disclaimer of coverage. The 30–day waiting period allows for the prospect that the insured, if held liable, may satisfy the judgment

directly, again without unnecessarily implicating the insurer. By the same token, this time limitation enables insurers and their customers to adjust their respective rights and duties among themselves before the injured third parties legally intervene between them.

*NAP*, 112 F.Supp.2d at 373 (internal citation omitted).

Moreover, this Court acknowledged the difference between a third-party judgment creditor and a party with interests similar to those of the initial insurer in *Reliance*. There, we allowed RIC to intervene because it was "*not* a personal injury claimant nor a judgment creditor seeking compensation for a loss under the Hartford Policy, but another insurer that is currently providing [co-defendants] with a defense in the underlying personal injury actions." 193 F.R.D. at 159 (emphasis added). Although subtle, the difference is critical. Because "the scope of its own obligations may depend upon the [declaratory action] outcome," *id.*, RIC could step into Hartford's shoes and assume all its liability. In effect, the two insurers are interchangeable under the statutory scheme, and thus RIC's intervention did not contravene the statute's intended purpose, for it was not seeking compensation under the Hartford Policy.

On the other hand, the Passengers, as injured third parties, are strangers to the indemnity contract, and would therefore gain an unanticipated advantage if they were allowed into the action. Granting them intervention would circumvent the judgment requirement of § 3420, a prerequisite for actions by injured third parties against indemnity insurers, and create a right not contemplated by the state legislature. *See Richards*, 40 F.Supp.2d at 169 ("[Injured third-parties'] remedies are those provided for in § 3420.... To permit an injured plaintiff to bring a declaratory judgment action before the conditions of the statute are fulfilled would bestow upon him a 'further privilege' not provided for in § 3420.") (internal citations omitted).

Thus the Court believes that the New York Court of Appeals would not allow the Passengers into the present action without their first obtaining a judgment against Mitlof, the insured party.

Under the facts of the instant case, we hold that the Passengers are barred by N.Y. INS. LAW § 3420 from intervening as defendants in this declaratory judgment action, either as of right under FED. R. CIV. P. 24(a) or permissively under FED. R. CIV. P. 24(b). This decision is not fatal to the Passengers's ultimate cause. If Hartford does not succeed in this action to obtain a declaration of non-coverage, and if the Passengers obtain a judgment against Mitlof, they may sue Hartford directly, following the statutory scheme.

### CONCLUSION

For the foregoing reasons, the Passengers's motions to intervene as defendants in this action are denied.

SO ORDERED.